IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

STEPHEN R. BUCKLEY,
      Plaintiff,

v.

                                  CASE NO.:

                                  JURY TRIAL DEMANDED

QUORUM INNOVATIONS, LLC,
a Florida Limited Liability Company,
ORBITAL AND OCULO-FACIAL CONSULTANTS, P.A.
d/b/a HAWTHORNE CLINIC AND RESEARCH CENTER,
NICHOLAS T. MONSUL, M.D.,
and EVA A. BERKES, M.D.
      Defendants,
                                /

## COMPLAINT

Plaintiff, Stephen R. Buckley ("Buckley"), sues Defendants, Quorum Innovations, LLC, a Florida limited liability company ("Quorum Innovations"), Orbital and Oculo-Facial Consultants, P.A. d/b/a Hawthorne Clinic and Research Center ("Hawthorne"), Nicholas T. Monsul, M.D., ("Monsul") and Eva A. Berkes, M.D. ("Berkes"), and states:

## PARTIES

1.    Buckley is an individual over 18 years of age who resides in New York County, New York.

2.    Quorum Innovations is a limited liability company which was formed in 2011 by Monsul and Berkes. Quorum Innovations is authorized to do business in the State of Florida, with its principal place of business in Sarasota County, Florida.

3.    Hawthorne is a fictitious name for Orbital and Oculo-Facial

{00056013}

EXHIBIT
Composite
A
tabbies

Consultants, P.A., which is a medical practice. Hawthorne is authorized to do business in the State of Florida, with its principal place of business in Sarasota County, Florida.

4.    Monsul is over 18 years of age and a resident of Sarasota County, Florida. Monsul is a founder, manager and CEO of Quorum Innovations and, at all times relevant to this Complaint, acted as an agent of Quorum Innovations. Monsul is also the founder, manager and CEO of Hawthorne and, at all times relevant to this Complaint, acted as an agent of Hawthorne.

5.    Berkes is over 18 years of age and a resident of Sarasota County, Florida. Berkes is a founder, manager and Chief Scientific Officer of Quorum Innovations and, at all times relevant to this Complaint, acted as an agent of Quorum innovations. Berkes is employed by Hawthorne, is an agent of Hawthorne and an owner.

6.    Venue is proper in Sarasota County, Florida because the cause of action accrued in Sarasota County, Florida and one or more of the Defendants reside there.

**BACKGROUND FACTS**

7.    Buckley is an entrepreneur who has started and developed a number of companies doing business within the United States as well as abroad. Buckley met Monsul and Berkes professionally at a time when one of Buckley's family members required medical services provided by Monsul and Berkes.

8.     Quorum Innovations is one of three entities formed by Monsul and Berkes with similar names.[1] Quorum Innovations is the entity through which Monsul and Berkes have conducted business. Quorum Innovations describes itself on its website as a "biopharmaceutical company focused on discovering and developing human microbiome therapeutics." Quorum Innovations is seeking to develop, market and sell skincare products and products to treat dermatitis, dry eye syndrome, blepharitis, sinusitis and esophagitis.

9.     In 2012, Monsul described to Buckley his and Berkes' research with respect to the human microbiome. Monsul said he believed he was the only doctor doing such research in the dermatology field. This research was being conducted at Hawthorne's offices, where Monsul and Berkes also maintained their medical practices. The commercial concept of Quorum was loosely defined and vaguely explained, but Monsul led Buckley to believe that Hawthorne and Quorum were inter-related and interdependent and that his and Berkes' efforts to integrate their clinical practice and scientific research in developing products to be sold commercially were well down the road.

10.     Monsul explained to Buckley that he could carry the expenses of the lab, but that he and Berkes required funding to fully realize the new venture and to deal with financial issues related to Hawthorne and Quorum. In fact, during one of their early meetings, Buckley observed equipment being removed from Hawthorne's offices. Monsul commented that, without the machines, he was dead in the water. Their discussion then

---

[1] Monsul and Berkes also formed Quorum Biofilm Research Laboratories, LLC and Quorum Biofilm Therapeutics, LLC, both of which have been administratively dissolved.

{00056013}                                    3

focused on ways in which Buckley could help with obtaining financing for new machines as well as investors for Quorum Innovations. Initially, Buckley agreed to make payments on a line of credit (LOC) owed by Hawthorne to an institutional lender, which Buckely began making in November of 2012.

11.  In December of 2012, at Monsul's request, Buckley made two financial contributions of $100,000 and $50,000 to Quorum Innovations. Buckley was led to believe by Monsul that those funds were to be used to purchase equipment for Hawthorne and Quorum Innovations. There were no specific discussions at that time as to whether these contributions would be equity or a loan.

12.  Early in their relationship, Monsul recognized that Buckley had much greater business expertise than did Monsul or Berkes. Monsul requested that Buckley begin looking at the business side of Quorum Innovations, including the marketing, manufacturing and distribution of the products it would develop. Monsul and Buckley discussed the idea of a separate entity, in which Buckley would have a 49% interest[2], to handle such matters.

13.  Intent on the success of this venture, Buckley continued to contribute financially to Quorum Innovations as well as Hawthorne and became personally involved in the operations of Quorum Innovations. After discussions with Monsul and Berkes regarding the vision for Quorum Innovations, and with their agreement, Buckley put together a team of advisors to enable the company's success going forward. Buckley recruited

---

[2] Quorum Biofilm Therapeutics, LLC ("Quorum Biofilm") was the entity that was contemplated and was formed by Monsul in August of 2014. Quorum Biofilm was later administratively dissolved.

{00056013}                     4

individuals for this team, including, Mary Wallace Jaensch and Nicholas King ("King"). King became the Chief Operating Officer for Quorum Innovations. Buckley personally financed the expenses for business trips and meetings, as well as the salary for King.

14.   After Buckley hired King, he learned that the Quorum Innovations' business was not as far along as he had been led to believe by Monsul and Berkes. Quorum Innovations, Monsul and Berkes requested even more money to purchase machines so that Quorum Innovations could produce a product to sell.

15.   In the Summer of 2013, while on a vacation in Greece, Buckley brought up the topic of his contributions. At that time, Buckley had made financial contributions to Quorum and Hawthorne in excess of $250,000, a fact that seemed to surprise Monsul. After the trip, Monsul suggested to Buckley that Buckley be given an equity interest in Quorum Innovations, although Monsul stated that he would need to discuss the equity amount further with Berkes. Monsul stated he would do the best he could for Buckley and led Buckley to believe the equity interest would be significant.

16.   In 2014, at Monsul's urging, Buckley spent over $40,000 to acquire bottles for Quorum Innovations' products. Further, Buckley spent over $43,000 to purchase three pieces of equipment used by Quorum innovations and Hawthorne (a Visia Scanner, a Calagari machine and a sterilizer) without which the operations could not continue. Since there had been no consummated agreement on the amount of equity Buckley was to receive, Buckley designated most of his later financial contributions

as "loans" on the checks to Quorum Innovations. Quorum Innovations, Monsul and Berkes now disagree with and object to this characterization.

17.   At some point in the summer of 2014, Buckley presented a spreadsheet showing potential profits for Quorum Biofilm (the entity that had been previously discussed to do the manufacturing, marketing and distributions of Quorum Innovation's products). The projections showed the potential for significant profits.

18.   In late summer of 2014, Monsul and Berkes, as agents of Quorum Innovations, presented Buckley an Operating Agreement for Quorum Innovations and indicated Buckley would receive a 5% non-voting share in Quorum Innovations for Buckley's contributions of approximately $500,000. This was contrary to prior representations by Monsul and Berkes that Buckley would have a significant interest in Quorum Innovations and was totally inconsistent with the reality that Quorum Innovations would likely have collapsed without Buckley's financial and personal contributions. Buckley rejected the proposal.

19.   Later in the summer of 2014, Monsul, Berkes and agents for Quorum Innovations sent Buckley a draft balloon promissory note in which Quorum Innovations agreed to pay Buckley $500,000.00, with an option (exercisable by Quorum Innovations) to convert the note into the above-mentioned 5% non-voting shares in Quorum Innovations should Buckley agree to sign the Quorum Innovations Operating Agreement. Buckley rejected this proposal since it was also contrary to prior representations by Monsul and Berkes.

20.   Finally, in late summer of 2014, Monsul and Berkes presented Buckley an Operating Agreement for the recently formed Quorum Biofilm.

{00056013}                          6

Instead of Buckley having a 49% interest, the Operating Agreement showed him as owning 15%, with an additional 15% interest for Nick King. This led to a complete breakdown in the trust Buckley had in Monsul and Berkes and left Quorum Innovations in an uncertain position.

21.   To date Buckley's financial contributions have exceeded $800,000.00.

22.   Buckley has demanded repayment, which has been ignored.

23.   All conditions precedent to filing this action have occurred or been waived.

24.   Buckley has retained the law firm of Hutton & Dominko, PLLC to represent him in this action and is obligated to pay a reasonable fee for services.

**COUNT I**
**VIOLATION OF § 517.07, FLA. STAT.**

25.   This is an action for damages that exceed $15,000 against Quorum Innovations, Monsul and Berkes for violation of § 517.07, Fla. Stat.

26.   Buckley realleges the allegations contained in paragraphs 1 through 24 above and incorporates them herein by reference.

27.   Florida Statutes section 517.07 states in pertinent part:

(1) It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter.

(2) No securities that are required to be registered under this chapter shall be sold or offered for sale within this state unless such securities have been registered pursuant to this chapter and unless prior to each sale the purchaser is furnished with a prospectus meeting the requirements of rules adopted by the commission.

28.   The financial contributions by Buckley to Quorum Innovations and Hawthorne are securities under § 517.021(22), Fla. Stat.

29.   Monsul and Berkes, individually and in their representative capacities for Quorum Innovations, offered to sell a security to Buckley by presenting him a draft balloon promissory note with an option to convert the note into non-voting shares in Quorum Innovations.

30.   At no time has the note ever been registered pursuant to the provisions of § 517.07, Fla. Stat.

31.   As a result of the foregoing Buckley has been damaged.

32.   Buckley is entitled to recover his attorneys' fees pursuant to Florida Statutes § 517.211.

**WHEREFORE**, Buckley demands judgment for damages against Quorum Innovations, Monsul and Berkes, jointly and severally, plus interest, attorneys' fees, costs and such further relief as this Court deems appropriate.

**COUNT II**
**VIOLATION OF § 517.301, FLA. STAT.**

33.   This is an action for damages that exceed $15,000 against Quorum Innovations, Monsul and Berkes for violation of § 517.301, Fla. Stat.

34.   Buckley realleges the allegations contained in paragraphs 1 through 24 above and incorporates them herein by reference.

35.   Florida Statutes section 517.301 states in pertinent part:

(1)   It is unlawful and a violation of the provisions of this chapter for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted

{00056013}                                8

under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:

       1.   To employ any device, scheme, or artifice to defraud;

       2.   To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

       3.   To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

    (b) To publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, communication, or broadcast which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received directly or indirectly from an issuer, underwriter, or dealer, or from an agent or employee of an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount of the consideration.

    (c) In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.

36.   The financial contributions by Buckley to Quorum Innovations and Hawthorne were made in connection with the offer, sale, or purchase of an investment or security by Quorum Innovations, Monsul and Berkes.

37.   Monsul and Berkes, individually and in their representative capacities for Quorum Innovations, made untrue statements of material fact to obtain the financial contributions from Buckley over the course of three years.

38.    Monsul and Berkes acted as agents for Quorum Innovations and induced and solicited Buckley to invest in Quorum innovations based on representations that Buckley's contributions would be in exchange for a significant equity interest in Quorum Innovations or an affiliate then, later, that they would be treated as a loan and repaid with interest.

39.    Monsul and Berkes, individually and as agents for Quorum Innovations, made untrue statements of material fact to Buckley to obtain property for Quorum Innovations including, but not limited to, scanners, a sterilizer and other necessary equipment to market and sell Quorum Innovations products.

40.    As a result of the foregoing material misrepresentations and omissions, Buckley has been damaged.

41.    Buckley is entitled to recover his attorneys' fees pursuant to Florida Statutes § 517.211.

**WHEREFORE**, Buckley demands judgment for damages against Quorum Innovations, Monsul and Berkes, jointly and severally, plus interest, attorneys' fees, costs and such further relief as this Court deems appropriate.

## COUNT II
## UNJUST ENRICHMENT

42.    This is an action for damages that exceed $15,000 against Quorum Innovations, Monsul, Berkes and Hawthorne for unjust enrichment.

43.    Buckley realleges the allegations in paragraphs 1 through 24 above and incorporates them herein by reference.

44.    Starting in 2012, Buckley has made substantial financial contributions to, or for the benefit of, Quorum Innovations, Hawthorne, Monsul and Berkes in the form of cash as well as direct purchases of

{00056013}                              10

bottles and equipment needed by Monsul and Berkes to continue the operation of Quorum Innovations and Hawthorne.

45.  Defendants owe Buckley for money provided to, or for the benefit of Quorum Innovations, Hawthorne, Monsul and Berkes beginning on or about December of 2012.

46.  Beginning in 2014 and continuing to the present date, Buckley has repeatedly demanded repayment from Quorum Innovations, Hawthorne, Monsul and Berkes, and they have repeatedly refused to repay Buckley.

47.  Defendants owe Buckley the financial contributions he has made to, or for the benefit of, Quorum Innovations, Hawthorne Monsul and Berkes, which exceed $800,000.

48.  Buckley has not been told how all of the money he provided to or for the benefit of Quorum Innovations, Hawthorne, Monsul and Berkes has been spent; however, Buckley knows that his funds were used to purchase equipment including a Visia scanner, a Calagari machine and a sterilizer which are being used by Quorum Innovations and Hawthorne.

49.  Defendants will be unjustly enriched if they are not required to repay the sums they have received from Buckley and if they are allowed to keep the equipment Buckley purchased.

**WHEREFORE**, Buckley demands judgment for damages against Defendants, jointly and severally, together with interest, attorneys' fees and costs of this action, a constructive trust against all of the assets of Quorum Innovations and Hawthorne that are determined to have been acquired with Buckley's funds and such further relief as this Court deems appropriate.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES AND CLAIMS.**

/s/ Steven D. Hutton
Steven D. Hutton
Florida Bar No. 0342221
sdh@huttondominko.com
Przemyslaw L. Dominko
Florida Bar No. 0074143
pld@huttondominko.com
HUTTON & DOMINKO, PLLC
2639 Fruitville Road
Suite 302
Sarasota, FL 34237
(941)364-9292 (Telephone)
Attorneys for Plaintiff

{00056013}                    12